## JOHNSTON v. SUTTON et al.

*(Circuit Court, N. D. Florida. February 25, 1891.)*

DEEDS—RECORDING—CURATIVE ACTS—TAX-TITLES.
　　An act of Florida of 1872 provided for the listing and sale of all lands that had accrued to the state by virtue of tax-deeds, and for the execution of deeds therefor, which, when recorded as other deeds of land, should be *prima facie* evidence of the regularity of all proceedings from the original tax-sale down to the execution of the deed itself, and, further, that it should operate as "a complete bar, after one year from the recording of such deed, against all persons who may thereafter claim title to said lands in consequence of any informality or illegality of the taxes or proceedings." *Held,* that such deed is not effectual to cure irregularities which rendered the original tax-deed to the state void, though it is spread on the records, where it was not acknowledged or proved for record, as deeds were required to be by the laws in force when it was executed.

In Equity. Bill to quiet title.
*H. Bisbee,* for complainant.
*Walker & L'Engle,* for defendants.

PARDEE, J. From my investigation of this case I am not satisfied that the complainant has shown such title to the lands in controversy as justifies the maintenance of his bill. The foundation of the complainant's title is a sale made to the state of Florida for taxes in the year 1849. The evidence shows a certified copy of a deed made by Virgil R. Dupont, tax collector of Orange county, on file in the office of commissioner of lands and immigration. Beyond the said copy there is no evidence offered in this case tending to show any compliance with the

laws of Florida then in force in regard to the assessment of land for taxes, and the sale of lands delinquent for taxes. The deed of the tax collector does not show that the lands described therein had been assessed for taxes in the name of any person or for any year, or were delinquent for taxes for any year; nor the amount of delinquent taxes thereon; nor any advertisement of sale; nor any sale by public outcry; nor any sufficient description of the lands purporting to be delinquent for taxes, and sold. And it is not shown by the said deed, nor by any other evidence in this case, that the law of Florida (chapter 214 of the Acts of Florida, approved January 11, 1849) under which the said sale purported to have been made, was otherwise complied with, in this: that the said tax collector forwarded to the comptroller an abstract showing against whom the tax was assessed, the amount, for what year, and the description of the land bought in for the state. These defects are of such serious nature as to impair the title of the state of Florida acquired by the sale in 1849, unless they have been cured by remedial legislation. The act of 1872, which is relied upon by complainant as transferring the title from the state of Florida to his predecessors, and as curing all defects in the proceedings from the valuation of the land up to the time of its sale to complainant's predecessors, provides, in the first section, for the making and advertising of a list of all lands which have accrued to the state by virtue of tax-deeds; in the second section for the redemption of such lands by any person in interest, upon application to the commissioner of lands and immigration, upon the payment of the tax specified in the tax-deed, and the cost of advertising; in the third section, for the sale of all such unredeemed lands after the expiration of six months, and for the sale, as lands subject to private entry, of all lands for which there shall be no bidder, the price of the tax and the cost of advertising; in the fourth section, for the form of the deed to be given the purchaser; and in sections 5, 6, and 7 as follows:

"Sec. 5. Such deed may be recorded as other deeds of land, and, when recorded in the office of the county clerk in the proper county, shall vest in the grantee therein named an absolute estate in fee-simple in the land therein described; and such deed, when so recorded, shall be *prima facie* evidence of the regularity of all the proceedings from the valuation of the land, the sale thereof, the execution of the deed from the tax collector or other officer of the state, up to the execution of the deed under the provisions of this act.

"Sec. 6. Any deed made in conformity with this act, which shall be recorded in the office of the county clerk in the county in which the land is situated, shall operate as a complete bar after one year from the recording of such deed against any and all persons who may thereafter claim title to said lands in consequence of any informality or illegality of the taxes or proceedings; and the title to said lands shall be complete in the purchaser thereof, his or her heirs or assigns, forever, saving, however, as to lands not subject to taxation, or in which infants, persons of unsound mind, imprisoned, or beyond the sea, the right to appear and contest the title to said lands within one year of their disabilities are removed.

"Sec. 7. The recording of any deed made under the provisions of this act in the county where the lands are situated shall give the person named in such deed possession in the premises."

Under this statute, the deed given by the commissioner of lands and immigration to the purchaser was required to be in a certain form. The deed offered in evidence in this case is not in the form required by the statute, but seems to have the material averments therein, as required, with the exception that the amount of the taxes assessed due and unpaid on the lands in controversy at the time of the sale in 1849, with the costs and charges thereon, is not correctly given, and the commissioner of lands and immigration did not, as required by said form, affix his official seal, but affixed instead the seal of the Florida state land-office. The fifth, sixth, and seventh sections of the statute, quoted above, provide that the curative effect to be given to the deed to the purchaser in relation to informalities and irregularities in the tax-sale and proceedings depends upon its being recorded, as other deeds of land, in the office of the county clerk of the county in which the land is situated. The law of the state in 1872 and 1873, at the time the law was passed and of the execution of the aforesaid deed, provided—

"That in order to procure the recording of any conveyance, transfer, or mortgage, the execution thereof by the party making the same shall be acknowledged by such party, or shall be proved upon oath by at least one of the subscribing witnesses thereto before the officer authorized by law to record the same, or before some judicial officer."

The aforesaid deed, given to complainant's predecessors by Dennis Eagan, commissioner of lands and immigration, appears to have been executed on the 25th day of April, 1873, to have been acknowledged by said Dennis Eagan on the 5th day of August, 1880, long after said Dennis Eagan had ceased to be commissioner of lands and immigration, and to have been put on the records without proof or acknowledgment, in the office of the clerk of the circuit court for Volusia county, the county in which the lands were situated, in the manner and at the times appearing by the following certificate:

"I, John W. Dickens, clerk of the circuit court of said county, do hereby certify that the above is a true and correct copy of a deed recorded in my office in Liber A of the tax-titles, page 1, and of the acknowledgment of the same. And I further certify that the same deed was recorded in my office on the 20th day of June, 1876, and the acknowledgment on the same on the 19th day of August, 1880.

"In witness whereof I have hereunto set my hand and seal of office, this 7th day of April, one thousand eight hundred and eighty-one.

"[Official Seal.]        [Signed]        JOHN W. DICKENS, Clerk."

Beyond this certificate, there is no proof in this case of any record of the deed given by the commissioner of lands and immigration to complainant's predecessors in 1873. If it is conceded that Dennis Eagan could, after he went out of office, make a valid acknowledgment of the deed given by him officially as commissioner of lands and immigration, it still remains that the record as made was of the deed, without either acknowledgment or proof; and since the deed was acknowledged there has been no record thereof, for certainly the record of the acknowledgment made August 19, 1880, cannot be considered as the record of the deed so acknowledged. That the record of a deed without proof or

acknowledgment is not a legal record importing verity, and admissible in evidence, see McClel. Dig. Fla. pp. 215, 216, §§ 6, 8, 9, p. 514, § 8; Thomp. Dig. Fla. pp. 180, 181, 343; *Sanders* v. *Pepoon,* 4 Fla. 465; *Doe* v. *Roe,* 1 Johns. Cas. 402.

As complainant's deed has not been recorded as other deeds of land in the office of the county clerk of the proper county, and as, under the statute, it is to have effect only when so recorded, it cannot be used and considered in this case as *prima facie* evidence of the regularity of all the proceedings from the valuation of the land and the sale thereof up to the time of its execution; nor can it be held as a complete bar against any and all persons who may claim title to said lands in consequence of informalities or illegalities in taxes or proceedings, nor can it be held as giving the person named in the deed any possession of the premises.

As further tending to defeat the complainant's title, it may be further noticed that on the 25th day of April, 1873, when the commissioner of lands and immigration executed the deed in question to complainant's predecessors, the law in force in the state of Florida in relation to recording conveyances of real estate provided:

"Every conveyance of real estate within this state hereafter made which shall not be recorded in the county in which the lands are situated within six months after the execution thereof shall be void as against any subsequent purchaser." See Florida Laws 1873, p. 18, c. 1939.

By the certificate of record referred to above, it appears that the said deed of the commissioner of lands and immigration, executed the 25th of April, 1873, was not recorded in any manner whatever until the 20th day of June, 1876, during which time the defendant's title was acquired from the state by deed executed by the county clerk of Volusia county on the 5th day of August, 1873.

A decree will be entered dismissing complainant's bill, with costs, February 23, 1891.